| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>Court Address: 1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: April 23, 2021 1:25 PM<br>FILING ID: AF0A02EBDDCDD<br>CASE NUMBER: 2021CV31299 |
| Plaintiff:<br>INTERSTATE RESTORATION, LLC<br><br>v.<br><br>Defendants:<br>MARRIOTT INTERNATIONAL, INC. and ZURICH AMERICAN INSURANCE CO. | ▲ **COURT USE ONLY** ▲ |
| Attorneys for Plaintiff<br>Name:           Christopher H. Toll, Reg No. 15388<br>                     Peter A. Kurtz, Reg No. 54305<br>Address:      HOLLAND & HART LLP<br>                     555 17th Street, Suite 3200<br>                     Denver, CO 80202-3921<br>Phone No.:  303.295.8000<br>Fax No:       303.295.8261<br>E-Mail:        ctoll@hollandhart.com<br>                     pakurtz@hollandhart.com | Case No.<br><br>Div:                      Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Interstate Restoration, LLC ("Interstate"), by its attorneys, alleges the following for its Complaint and Jury Demand ("Complaint") against Marriott International, Inc. ("Marriott") and Zurich American Insurance Co. ("Zurich"):

## PARTIES, JURISDICTION, AND VENUE

1. Interstate is a limited liability company formed under the laws of Colorado with its principal place of business at 6200 S. Syracuse Way, Suite 230, Greenwood Village, CO 80111.

2. Marriott is a Delaware corporation with its principal place of business located at 10400 Fernwood Road, Bethesda, Maryland 20817. Marriott has a Colorado registered agent, located in Centennial, Colorado.

3. Zurich is a New York corporation with its principal place of business located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007. Zurich has a registered agent located in Littleton, Colorado.

**Exhibit A**

4. This Court has personal jurisdiction over Marriott because, pursuant to the February 8, 2019 Work Order between Marriott and Interstate ("Contract"), Marriott submitted itself to the jurisdiction of this Court and because it is registered to do business in Colorado.

5. This Court has personal jurisdiction over Zurich because Zurich committed torts that caused damages in the State of Colorado. Additionally, upon information and belief, Zurich is authorized to conduct the business of insurance in the State of Colorado.

6. Venue is proper in Denver County District Court with respect to Marriott because, in the Contract, Marriott consented to venue in this Court. Venue is proper in this Court with respect to Zurich because under C.R.C.P. 98(c)(1) Zurich is a non-resident and the City and County of Denver is designated as the place of trial in the Complaint.

## GENERAL ALLEGATIONS

*Interstate's Business*

7. Interstate is a full-service emergency response restoration and reconstruction company, offering a comprehensive suite of services to help its clients recover from property damage, including emergency response, drying, fire and water damage restoration, reconstruction, and project management.

8. Interstate's clients call on Interstate to help with restoration and reconstruction projects both domestically and abroad. Because Interstate is often retained to handle emergencies, its ability to mobilize quickly is critical to its success.

9. Accordingly, when a client retains Interstate, Interstate's practice is for the parties to execute a contract, which sets forth the general terms of the parties' relationship and the scope of the work to be performed by Interstate.

10. After Interstate has had a chance to evaluate the project, Interstate's practice is to issue "scope letters" that set forth in detail the work Interstate plans to undertake and its estimated cost. These scope letters constitute additional terms of the contract.

*Interstate and Marriott Enter into a Contract, Whose Terms Are Approved by Zurich*

11. In February 2019, Marriott hired Interstate to repair one of its hotels, the Sheraton Grand Rio Hotel & Resort, located in Rio de Janeiro, Brazil (the "Sheraton Grand").

12. The Sheraton Grand had suffered millions of dollars of property damage from a mudslide and from a fire.

13. In connection with the damage to the Sheraton Grand, Marriott filed an insurance claim with Zurich under its property damage policy.

14. The Zurich insurance policy provided coverage for the damage to Marriott's property caused by the mudslide and by the fire.

15. Marriott intended to use insurance proceeds from the Zurich insurance policy to pay amounts owed for Interstate's work.

16. Zurich retained Criterio Experts ("Criterio") as its claim consultant to adjust the claim on Zurich's behalf.

17. Criterio was Zurich's agent with respect to Marriott's claim for coverage under its Zurich property damage policy.

18. Marriott and Interstate memorialized their agreement for Interstate to repair the mudslide and fire damage in the Contract, copy attached as **Exhibit 1**. The Contract was executed on February 8, 2019.

19. The Contract authorized Interstate to "mobilize, commence and perform" work, including mitigation, drying, and cleanup of damaged areas of the Sheraton Grand. In the Contract, Marriott agreed to pay for all labor, materials, and equipment Interstate used to perform the work authorized by the Contract, whether or not such work was covered by insurance.

20. Marriott also agreed to pay Interstate's invoices within ten days of receiving them.

21. The Contract permitted Interstate to charge Marriott interest on all past due invoices equaling the lesser of the maximum interest rate allowed by law or 2% per month. In addition, the Contract permitted Interstate to recover from Marriott reasonable costs and attorneys' fees incurred by Interstate to collect such past-due amounts.

22. The Contract also expressly incorporated as "Attachment B" Interstate's Time and Materials Rate Schedule (the "Rate Schedule"). The Rate Schedule is a comprehensive list of Interstate's pricing for labor, equipment, and materials.

23. For commonly used labor, equipment, and materials, the Rate Schedule sets forth specific prices. For example, pursuant to the Rate Schedule, Interstate bills clients for general labor at the rate of $34.00 per hour. For less common labor, equipment, and materials, Interstate charges clients based on a cost plus margin formula, which is indicated in the Rate Schedule.

24. By executing the Contract, Marriott agreed to pay the rates set forth in the Rate Schedule, including the labor rates therein.

25. Marriott and/or Interstate shared the Contract and the Rate Schedule with Zurich.

26. Zurich approved the terms of the Contract, including the Rate Schedule.

27. In the performance of its work, including the hiring of its own subcontractors, Interstate relied on the terms of the Contract, including the Rate Schedule.

*Interstate Performs under the Contract*

28. After the parties executed the Contract, Interstate sent a team to Rio de Janeiro to inspect the Sheraton Grand and to begin the process of determining the full scope of work required to repair it.

29. Thereafter, Interstate issued numerous scope letters and, as the work progressed and new information became available, revisions to some of those scope letters. Each of these scope letters is part of the parties' Contract.

30. One of Zurich's agents, Sedgwick Cunningham Lindsey, was an addressee of each scope letter, and on information and belief, Zurich obtained a copy of each scope letter as part of the claims process.

31. On February 14, 2019, Interstate issued its first scope letter ("Initial Mobilization Scope Letter") for the project. The letter identified the project's preliminary steps, including sending U.S.-based personnel to the project site; procuring equipment and material; engaging local vendors; and performing initial emergency muck-out operations.

32. The scope letter requested a $1,000,000.00 mobilization deposit to cover the services outlined therein. It further stated that Interstate proposed to perform these services based on the rates set forth in the Rate Schedule.

33. Marriott agreed to the scope letter.

34. Consistent with the Initial Mobilization Scope Letter, Interstate mobilized its U.S-based personnel and began its work on site in Rio de Janeiro.

35. On February 18, 2019, Interstate issued another scope letter. This letter described in detail all work known at the time of its issuance required to mitigate damage caused by the mudslide and to restore parts of the hotel ("Emergency Services Scope Letter").

36. Specifically, the scope letter stated Interstate would restore two restaurants and a lounge, mechanical and room service facilities, a storage building, and hotel grounds. To do so, Interstate would run crews of up to 100 workers for 12 hours a day for 60 to 70 days.

37. As with the Initial Mobilization Scope Letter, the Emergency Services Scope Letter stated that Interstate proposed to perform the outlined services based on the rates set forth in the Rate Schedule.

38. Marriott agreed to this scope letter.

39. Interstate issued two revisions of the Emergency Services Scope Letter in February and March of 2019, as well as a separate scope letter that covered additional repairs for damage caused by the mudslide ("Emergency Services Secondary Occurrence Scope Letter").

40. Each of these scope letters was subject to the Rate Schedule. Marriott agreed to each of these scope letters.

41. Interstate also issued scope letters concerning a reconstruction phase of the project, which would commence after Interstate completed portions of its emergency work.

42. On April 18, 2019, Interstate issued a scope letter concerning this reconstruction phase ("Reconstruction Phase First Scope Letter").

43. In it, Interstate proposed to perform the outlined services based on the rates set forth in the Rate Schedule. Marriott agreed to this scope letter.

44. Two weeks later, on May 1, 2019, Interstate issued another scope letter for the reconstruction phase ("Reconstruction Phase Second Scope Letter"). It too stated that Interstate proposed to perform the outlined services based on the rates set forth in the Rate Schedule. Marriott agreed to this scope letter.

45. In addition to repairing damage to the Grand Sheraton caused by the mudslide, Interstate also performed repairs to the Grand Sheraton caused by a fire. This work was performed under the Contract.

46. On March 1, 2019, Interstate issued an initial scope letter for that work ("First Fire Loss Scope Letter"). The First Fire Loss Scope Letter stated that Interstate would perform services based on the rates set forth in the Rate Schedule. Marriott agreed to this scope letter.

47. On April 1, 2019, Interstate issued a second scope letter concerning the fire damage ("Second Fire Loss Scope Letter"). This scope letter concerned reconstruction of the area affected by the fire. It also stated that Interstate would perform the scope of services set forth therein based on the rates set forth in the Rate Schedule. Marriott agreed to this scope letter.

48. Interstate performed the work set forth in the Initial Mobilization Scope Letter, the Emergency Services Scope Letter, the Emergency Services Secondary Occurrence Scope Letter, the First Fire Loss Scope Letter, the Second Fire Loss Scope Letter, as well as substantial work under the Reconstruction Phase First Scope Letter, and the Reconstruction Phase Second Scope Letter.

49. Once Interstate completed its work, Interstate issued invoices.

50. On February 19, 2019, Interstate invoiced Marriott for $1,000,000.00.

51. On May 30, 2019, Interstate invoiced Marriott for $67,287.55.

52. On May 31, 2019, Interstate issued three invoices to Marriott: one for $3,500,760.51; another for $987,660.19; and a third for $69,068.71.

53. Finally, on August 26, 2019, Interstate issued an invoice for $1,595,953.10.

54. The invoices were based on pricing set forth in the Rate Schedule, which Marriott had agreed to when it executed the Contract and accepted the scope letters.

55. Together, these invoices sought $7,220,730.06 for work Interstate performed for Marriott.

*Zurich Interferes, and Marriott Breaches the Contract*

56. Even though each of Interstate's invoices is now long past due, Interstate has not been paid in full. Interstate has received only $4,552,574.67 of the total amount due.

57. Marriott still owes Interstate $2,668,155.39 in principal under the invoices.

58. In addition, those invoices have incurred interest at the rate of 24% per year.

59. As of April 8, 2021, Interstate is owed approximately $1,065,243.30 in contractual interest, and that amount continues to increase.

60. In principal and interest, as of April 8, 2021, Marriott owes Interstate a total of $3,733,398.69.

61. Zurich, through its agent Criterio, has instructed Marriott to refrain from paying the full value of Interstate's invoices, contending that Marriott should pay Interstate based not on the agreed-upon Rate Schedule but on different rates, to which the parties never agreed.

62. These proposed rates are lower than those the parties agreed to in the Contract.

63. At Zurich's urging, Marriott has refused to tender payment to Interstate for the full value of the invoices. Marriott has thus failed to perform under its contract with Interstate.

64. Zurich and Interstate have communicated regarding the Contract and Marriott's obligations under it.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Marriott)

65. Interstate incorporates paragraphs 1 - 64.

66. The Contract is a binding and enforceable contract between Interstate and Marriott.

67. The Contract incorporates both the Rate Schedule as well as the scope letters. Together, the Contract, Rate Schedule, and scope letters are an enforceable contract.

68. Interstate performed its obligations under the Contract, by completing the work set forth in the Contract and the scope letters.

69. Marriott has breached the Contract by failing to pay Interstate's invoices as they came due.

70. Since June 2019, when Marriott initially defaulted on its payment obligations to Interstate, Marriott's unpaid principal has accrued approximately $1,065,243.30 in contractual interest.

71. Marriott's breach of contract has caused Interstate to incur damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
**(Interference with Contract Against Zurich)**

72. Interstate incorporates paragraphs 1 - 71.

73. Marriott entered into the Contract with Interstate, under which Marriott agreed to pay Interstate's invoices for work Interstate performed at the Grand Sheraton.

74. Zurich knew of the existence of the Contract, because Marriott and/or Interstate disclosed it to Zurich, and because Zurich communicated with Interstate regarding Marriott's payment obligations to Interstate under the Contract.

75. Zurich improperly interfered with Marriott's performance of its obligations under the Contract through its agent Criterio.

76. Specifically, Criterio instructed Marriott to refrain from paying Interstate's invoices in full, based on the contention that Marriott should pay Interstate based on different rates, to which the parties never agreed.

77. Zurich's improper conduct has caused Marriott to breach its contract with Interstate.

78. Zurich's interference was intentional and for an improper purpose, namely to force Interstate to accept less money than it was owed under its invoices and to increase its own profits.

79. Zurich's interference with the Contract has caused and continues to cause damages to Interstate in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment Against Marriott)

80. Interstate incorporates paragraphs 1 - 79.

81. In 2019, Interstate supplied Marriott with services with economic value.

82. Interstate did not provide the services as a gift or in a gratuitous manner; rather Interstate expected payment for the services it provided to Marriott.

83. Interstate has been harmed by Marriott's failure to pay for the benefits it received from Interstate in the form of services, and it would be unjust for Marriott to retain those benefits without paying for them.

84. As an alternative to the First Claim for Relief, Interstate seeks restitution for the value of the services that Marriott received and accepted from Interstate in an amount to be proven at trial.

### JURY DEMAND

Interstate demands a jury trial on all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Interstate Restoration, LLC respectfully requests that the Court enter judgment in its favor and against Defendants Marriott International, Inc. and Zurich American Insurance Co. and grant relief as follows:

    a) Damages in an amount to be proven at trial;

    b) Applicable prejudgment and post-judgment interest;

    c) Attorneys' fees and other costs awardable to Interstate under the Contract and applicable law; and

    d) Such other and further relief as the Court deems just and proper.

Dated April 23, 2021.

Respectfully submitted,

*s/ Christopher H. Toll*
Christopher H. Toll
Peter A. Kurtz
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
Facsimile: 303.295.8261
ctoll@hollandhart.com
pakurtz@hollandhart.com

**Attorneys for Plaintiff**

Plaintiff's address:
6200 S. Syracuse Way, Suite 230
Greenwood Village, CO 80111

16601400_v2