**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-01380-NYW-SKC

INTERSTATE RESTORATION, LLC,

      Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC., and
ZURICH AMERICAN INSURANCE CO.,

      Defendants.

---

**ORDER ON PENDING OBJECTIONS TO DEPOSITION DESIGNATIONS
AND TRIAL EXHIBITS**

---

This matter is before the Court on (1) Defendant Zurich American Insurance Co.'s Objections and Responses to Deposition Designations ("Zurich American's Objections"), [Doc. 95, filed July 20, 2023]; (2) Defendant Marriott International, Inc.'s Objections to Deposition Designations ("Marriott International's Objections"), [Doc. 98, filed July 20, 2023]; and (3) Plaintiff Interstate Restoration, LLC's Brief in Support of Deposition Designation Objections ("Plaintiff's Objections and, collectively with the other Parties' objections, the "Objections to Deposition Designations" or "Objections"), [Doc. 130, filed October 3, 2023]. *See also* [Doc. 133, filed October 24, 2023 (Joint Submission of Deposition Designations and Objections)]. The Parties also appeared before the Court for a four-day bench trial commencing on August 28, 2023, *see* [Doc. 124; Doc. 145; Doc. 126; Doc. 127], during which this Court took under advisement the admission of Trial Exhibit 168. Upon review of the record, and for the reasons set forth herein, the Court respectfully rules as follows.

## BACKGROUND[1]

This case arises from property damage caused by a mudslide at the Sheraton Grand Rio Hotel & Resort, a "Marriott-branded" hotel in Rio de Janeiro, Brazil (the "Sheraton" or the "Hotel"), and the subsequent repairs performed by Plaintiff Interstate Restoration, LLC, ("Interstate" or "Plaintiff"), which claims that it has not been paid in full for its work. *See generally* [Doc. 32; Doc. 77].

In early February 2019, a mudslide caused millions of dollars' worth of damage at the Hotel. [Doc. 77 at ¶ 8]. The Hotel was insured through Marriott's property insurance program, through policies from Defendant Zurich American Insurance Company ("Zurich American") and non-party Zurich Minas Brasil Seguros S.A. ("Zurich Brazil"). [*Id.* at ¶¶ 3–4]. Hector Mastrapa ("Mr. Mastrapa"), Senior Vice President for Risk Management for Defendant Marriott International, Inc. ("Marriott International"), called Brett Conrad ("Mr. Conrad"), a Vice President at Interstate, on February 8, 2019, and inquired whether Interstate had capabilities to deploy resources to handle the loss at the Sheraton. [*Id.* at ¶ 9]. Mr. Conrad confirmed that Interstate had the requisite capabilities. [*Id.*]. Mr. Mastrapa also requested that Interstate mobilize a team to Brazil as soon as possible, which Interstate agreed to do. [*Id.*].

That same day, Mr. Conrad forwarded Mr. Mastrapa an Advanced Work Order ("AWO"). [*Id.* at ¶¶ 10–11; Tr. Ex. 7; Tr. Ex. 40]. The "Project Name" on the AWO is identified as "Sheraton Grand Rio Hotel & Resort"; the Project No. reflects "2008-19-6169"; and the work description states "Mitigation, Drying and cleanup of affected areas." [Tr. Ex. 7]. While the AWO refers to

---

[1] Unless otherwise indicated, the Court draws the following facts from its Memorandum Opinion and Order on the Defendants' respective Motions for Summary Judgment and the trial record, including transcripts from the four-day bench trial and exhibits. *See* [Doc. 77 at 1–4; Doc. 124; Doc. 125; Doc. 126; Doc. 127].

an Interstate Time and Materials Rate Schedule, which purportedly was included as "Attachment B," [*id.*], no Attachment B was included. The AWO is signed by Sintia Gomes ("Ms. Gomes"), the manager of the Hotel, who is employed by a Brazilian entity called Companhia Palmares Hoteis e Turismo S.A. ("Companhia"). [Tr. Ex. 7; Doc. 77 at ¶¶ 12, 16]. Ms. Gomes did not fill out the signature block below her signature or identify her title. [Tr. Ex. 7]. Nor does the AWO identify the entity for whom Ms. Gomes works. [*Id.*]. When returning the AWO to Mr. Conrad, Mr. Mastrapa indicated that the contract was signed by the "hotel GM," and provided Sintia.Gomes@marriott.com as her email address. [Tr. Ex. 42].

Between February 26, 2019 and April 18, 2019, Interstate executed National Agreement Work Order ("NAWO") Project No. 2008-19-6560 ("NAWO No. 1"), [Tr. Ex. 59]; NAWO Project No. 1008-19-6559 ("NAWO No. 2"), [Tr. Ex. 61]; NAWO Project No. 1008-19-6885 ("NAWO No. 3"), [Tr. Ex. 68]; and NAWO Project No. 1008-19-7535 ("NAWO No. 4"), [Tr. Ex. 79], covering various aspects of repairs at the Hotel, with NAWO No. 4 covering the "[c]omplet[ion] of all final [r]epairs of affected areas from storm damage," [Tr. Ex. 79]. The Project Name and Location for each of these NAWOs is "Marriott Int'l Av. Niemeyer 12 Leblon, Rio de Janerio, Brazil 22450-22." *See* [Tr. Ex. 59; Tr. Ex. 61; Tr. Ex. 68; Tr. Ex. 79]. The "Company Name" on each of these NAWOs is listed as "Marriott International." *See* [Tr. Ex. 59; Tr. Ex. 61; Tr. Ex. 68; Tr. Ex. 79]. Each of the NAWOs refers to a "National Account Agreement that has been executed between the [P]arties," *see* [Tr. Ex. 59; Tr. Ex. 61; Tr. Ex. 68; Tr. Ex. 79], but no such National Account Agreement exists. In addition, each of the NAWOs indicates that the "Project Type" is "T&M (Based on INTERSTATE'S T&M Rate Schedule per the Agreement)." *See* [Tr. Ex. 59; Tr. Ex. 61; Tr. Ex. 68; Tr. Ex. 79]. The term "Agreement," is not defined. *See* [Tr. Ex. 59; Tr. Ex. 61; Tr. Ex. 68; Tr. Ex. 79]. Ms. Gomes signed each of these

NAWOs as "General Manager" for "Client/Owner." *See* [Tr. Ex. 59; Tr. Ex. 61; Tr. Ex. 68; Tr. Ex. 79].

Around the time that Interstate executed the AWO, Marriott International informed Zurich American of the damage at the Hotel. [Doc. 101 at ¶ 27; Tr. Ex. 4]. On the Property Loss Notice, the insured is identified as "Marriott International." [Tr. Ex. 4 at 1]. The description of the loss and damage is described as "[d]amages due to torrential rains and surface water at the Sheraton Grand Rio Resort & Hotel in Rio de Janeiro, Brazil." [*Id.*]. The Property Loss Notice further states "Claim handled by Zurich Brazil." [*Id.*]. Interstate claims that "Marriott [International] intended to use insurance proceeds from the Zurich insurance policy to pay amounts owed for Interstate's work." [Doc. 32 at ¶ 17]. After completing its work, Interstate issued invoices to Marriott International and/or the Hotel that totaled approximately $7.2 million. [*Id.* at ¶¶ 59–65]. Interstate has received payment for $4,552,574.67 of the $7,220,730.06 that it invoiced for its work restoring the Hotel. [Doc. 101 at ¶ 51; Doc. 77 at ¶ 28]. The unpaid principal amount of Interstate's invoices is therefore $2,668,155.39. [Doc. 101 at ¶ 51; Doc. 77 at 29].

Interstate alleges that Zurich American "instructed Marriott [International] to refrain from paying the full value of Interstate's invoices, contending that Marriott [International] should pay Interstate based not on the agreed-upon Rate Schedule but on different [lower] rates, to which the parties never agreed." [Doc. 32 at ¶¶ 69–70]. According to Interstate, Zurich American made this advisement based on information from Critério Experts ("Critério"), a "claim consultant" whom Interstate alleges "Zurich retained . . . to adjust the claim on Zurich's behalf." [*Id.* at ¶¶ 18, 69].

Interstate initiated this action on April 23, 2021, in the District Court for the City and County of Denver, Colorado against Marriott International and Zurich American (collectively, "Defendants"), [Doc. 5], and Zurich American removed the case to federal court one month later,

[Doc. 1].  On August 31, 2021, Interstate filed the operative Amended Complaint and Jury Demand ("Amended Complaint").  [Doc. 32].  Defendants filed their answers on September 14, 2021. [Doc. 36; Doc. 37].  Interstate asserts three claims for relief: (1) breach of contract against Marriott International (Count I); (2) intentional interference with contract against Zurich American (Count II); and (3) unjust enrichment against Marriott International (Count III).  *See* [Doc. 32 at ¶¶ 73–92]. For its breach of contract claim, Interstate alleges that it performed its obligations under the repair contract by completing the work set forth in the AWO and the scope letters, and "Marriott [International] has breached the Contract by failing to pay Interstate's invoices as they came due." [*Id.* at ¶¶ 76–77].  For its intentional interference with contract claim, Interstate claims that "Zurich improperly interfered with Marriott [International]'s performance of its obligations under the Contract through its agent, Critério," who "instructed Marriott [International] to refrain from paying Interstate's invoices in full, based on the contention that Marriott [International] should pay Interstate based on different rates, to which the parties never agreed."  [*Id.* at ¶¶ 83–84].  This "improper conduct" thus "caused Marriott [International] to breach its Contract with Interstate." [*Id.* at ¶ 85].  Finally, for its unjust enrichment claim, Interstate alleges that it "has been harmed by Marriott [International]'s failure to pay for the benefits it received from Interstate in the form of services, and it would be unjust for Marriott [International] to retain those benefits without paying for them."  [*Id.* at ¶ 91].  Interstate seeks relief under this claim "[a]s an alternative" to its breach of contract claim.  [*Id.* at ¶ 92].[2]

The Parties have jointly submitted a compilation of their Deposition Designations and Objections.  [Doc. 133]; *see also* [Doc. 95 (Zurich American's Objections); Doc. 98 (Marriott

---

[2] Following the close of discovery, Defendants each moved for summary judgment, [Doc. 59; Doc. 63], but this Court denied their motions, finding disputed material facts, [Doc. 77].

International's Objections); Doc. 130 (Plaintiff's Objections)].   At trial, Plaintiff offered the depositions of:  (1) Ryan Porterfield ("Mr. Porterfield"); (2) David Buck ("Mr. Buck"); (3) Mr. Mastrapa, as the Rule 30(b)(6) deponent for Marriott International; (4) John Harmon ("Mr. Harmon"), as the Rule 30(b)(6) deponent for Zurich American; (5) Cathie Winfell ("Ms. Winfell"); (6) Amadou Njie ("Mr. Njie"); and (7) Don Shiplet ("Mr. Shiplet").  [Doc. 124 at 51:21–52:4].[3] Zurich American also offered the deposition of Mr. Wenstrom, as the Rule 30(b)(6) deponent for Interstate.  [Doc. 127 at 943:5-9].  Marriott International did not offer any deposition transcripts at trial.  *See generally* [Doc. 124; Doc. 125; Doc. 126; Doc. 127].

The Parties also filed their respective objections to certain exhibits.  *See* [Doc. 96 (Zurich American's Objections to and Responses to Exhibits); Doc. 99 (Marriott International's Objections to Exhibits); Doc. 110 (Plaintiff's Objections to Trial Exhibits)].  After trial, it appears that the only remaining dispute is whether Trial Exhibit 168—which was accepted as a demonstrative exhibit—should be admitted in evidence.  *Compare* [Doc. 124; Doc. 125; Doc. 126; Doc. 127], *with* [Doc. 120].

Finally, the Parties, jointly and individually, filed proposed findings of fact and conclusions of law.  *See* [Doc. 100 (Plaintiff's Proposed Findings of Fact, Conclusions of Law, and Orders); Doc. 101 (Joint Proposed Findings of Fact and Conclusions of Law); Doc. 102 (Zurich American's Proposed Findings of Fact and Conclusions of Law); Doc. 103 (Marriott's Proposed Findings of Fact and Conclusions of Law)].  As discussed during the Trial Preparation Conference, this Court

---

[3] When citing to a transcript, whether trial or deposition, the Court references the docket number from the District of Colorado's Case Management/Electronic Case Files ("CM/ECF") system—if applicable—but the page and line numbers from the original transcript for the purposes of consistency.

construes the Parties' Joint Proposed Findings of Fact and Conclusions of Law as stipulations by the Parties.  [Doc 105].

After the conclusion of the four-day bench trial that commenced on August 28, 2023, the Parties have indicated to the Court that they have no additional exhibits subject to pending deposition designation to offer beyond those which were admitted during trial, *see* [Doc. 122], and have no supplements to make to their Joint Proposed Findings of Fact and Conclusions of Law, [Doc. 123]; *see also* [Doc. 101].   On October 3, 2023, the Parties filed a Joint Notice Re Completion of Trial Transcripts and Request for Deadline to Submit Supplemental Proposed Findings of Fact and Conclusions of Law.  [Doc. 128].

## LEGAL STANDARDS

The Court now turns to the Parties' Objections to Deposition Designations and to the admissibility of Exhibit 168.  Before ruling, the Court sets forth the standards governing its resolution of the various Objections raised by the Parties pursuant to the Federal Rules of Evidence.

## I.    Rule 32 of the Federal Rules of Civil Procedure

Rule 32 of the Federal Rules of Civil Procedure provides for the use of depositions at trial. Fed. R. Civ. P. 32.  In general, depositions may be used against a party at trial when "the party was present or represented at the taking of the deposition or had reasonable notice of it"; it is used to the extent that the testimony would be admissible under the Federal Rules of Evidence if the deponent was present and testifying live at trial; and the use is allowed by the other provisions of Rule 32.  Fed. R. Civ. P. 32(a)(1).  Permitted uses include:  (1) to contradict or impeach live testimony, Fed. R. Civ. P. 32(a)(2); (2) for any purpose by an adverse party when the deponent is "a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)," Fed. R. Civ. P. 32(a)(3); and (3) if a party is unavailable

as defined by Rule 32(a)(4), Fed. R. Civ. P. 34(a)(4).  Rule 32(a)(6) also contemplates that if a party only offers a portion of a deposition in evidence, an adverse party "may require the offeror to introduce other parts that in fairness should be considered with the part introduced," and any party may itself introduce other parts.  Fed. R. Civ. P. 32(a)(6).  Subject to Rules 28(b)[4] and 32(d)(3),[5] deposition testimony offered at trial is subject to objection on the basis of inadmissibility.  Fed. R. Civ. P. 32(b).

## II.      Rule 102 of the Federal Rules of Evidence

Rule 102 of the Federal Rules of Evidence directs trial courts to construe the Rules "so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."  Fed. R. Evid. 102.

## III.     Rules 401, 402, and 403 of the Federal Rules of Evidence

Rule 402 of the Federal Rules of Evidence provides that relevant evidence—evidence that has "any tendency" to make a fact that "is of consequence in determining the action" "more or less probable than it would be without the evidence," Fed. R. Evid. 401—is generally admissible, whereas irrelevant evidence is inadmissible, Fed. R. Civ. P. 402; *see also see Cohen v. Pub. Serv. Co. of Colo.*, No. 13-cv-00578-WYD-NYW, 2015 WL 6446948, at *2 (D. Colo. Oct. 26, 2015). And, pursuant to Rule 403 of the Federal Rules of Evidence, "[a] court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice,

---

[4] Rule 28(b) governs depositions taken in a foreign country.  Fed. R. Civ. P. 28(b).

[5] Rule 32(d)(3) governs the taking of a deposition, and subsection (d)(3)(B) requires that objections to "the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at th[e] time" be "timely made during the deposition."  Fed. R. Civ. P. 32(d)(3)(B).

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Cohen*, 2015 WL 6446948, at *2 (discussing Fed. R. Evid. 403).

## IV.    Rule 408 of the Federal Rules of Evidence

Rule 408(a) of the Federal Rules of Evidence states that evidence of "(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim" is not admissible as evidence when offered "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).  A court may admit such evidence, however, "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

## V.    Rule 602 of the Federal Rules of Evidence

Under Rule 602 of the Federal Rules of Evidence, a witness "may testify to only those matters to which they have personal knowledge." *MacKinney v. Allstate Fire and Cas. Ins. Co.*, No. 16-cv-01447-NYW, 2018 WL 4242922, at *7 (D. Colo. Sept. 6, 2018) (discussing Fed. R. Evid. 602).  Although "positive knowledge or absolute certainty" is not required, "the trial court properly excludes testimony if 'it finds that the witness could not have actually perceived or observed that which she testifies to.'" *Id.* (alteration omitted) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)).  As the Rule states, "[e]vidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.

**VI.     Rule 611(a) of the Federal Rules of Evidence**

Rule 611(a) of the Federal Rules of Evidence empowers the trial court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:  (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."  Fed. R. Evid. 611(a).

The Parties lodge various objections under Rule 611(a) to questions that they argue improperly call for "legal conclusion[s]."  *See, e.g.*, *infra*, at 13–16.  The Tenth Circuit "has recognized that an expert witness cannot state legal conclusions by applying law to the facts, passing upon weight or credibility of the evidence, or usurping the province of the jury by telling it what result should be reached."  *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979) (citing *Frase v. Henry*, 444 F.2d 1228, 1231 (10th Cir. 1971)).  Nevertheless, "an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment."  *Ellis v. Hobbs Police Dep't*, 472 F.Supp.3d 1087, 1092 (D.N.M. 2020) (citing *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015)).  And, as discussed below, lay witness opinion testimony is limited to that which is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702," Fed. R. Evid. 701, which would generally exclude a lay witness's testimony as to purely legal conclusions, *see Cardinal Aluminum Co. v. Cont'l Cas. Co*., No. 3:14-cv-857-TBR-LLK, 2015 WL 4068405, at *4 (W.D. Ky. July 2, 2015) ("A lay witness cannot generally testify as to legal conclusions."  (citing Fed. R. Evid. 701(c)); *cf. Coomer v. Make Your Life Epic LLC*, No. 21-cv-03440-WJM-KLM, 2023 WL 2390711, at *6 (D. Colo. March 7, 2023) (allowing

lay witness's declaration that "does not attempt to tell the Court how to apply certain facts to the law" and otherwise met the requirements of Rule 701 of the Federal Rules of Evidence).

## VII.   Rules 701 and 702 of the Federal Rules of Evidence

The Federal Rules of Evidence dictate that "opinion testimony based on scientific, technical, or other specialized knowledge must be offered by an expert witness pursuant to Fed. R. Evid. 702." *Bryant v. Colo., Dep't of Trans.*, No. 16-cv-01638-NYW, 2018 WL 2445831, at *3 (D. Colo. May 31, 2018) (discussing Rules 701 and 702 of the Federal Rules of Evidence). Thus, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (internal quotation marks omitted); *see also* Fed. R. Evid. 701 ("If a witness is not testifying as an expert," opinion testimony is limited to that which is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific technical, or other specialized knowledge within the scope of Rule 702.").

## VIII.   Rule 802 of the Federal Rules of Evidence

Rule 802 of the Federal Rules of Evidence prohibits the admission of "hearsay'—an out-of-court statement offered to prove the truth of the matter asserted, *see* Fed. R. Evid. 801(c); *see also United States v. Thompson*, 543 F. Supp. 3d 1156, 1162 (D.N.M. 2021)—unless otherwise allowed by federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court."  The Federal Rules of Evidence provide a number of exceptions to this rule against hearsay, *see, e.g.*, Fed. R. Evid. 803, 804, 807, and also exclude various statements from the definition of prohibited hearsay, *see* Fed. R. Evid. 801(d) ("Statements That Are Not Hearsay").

## ANALYSIS

Upon review of the Parties deposition designations and objections and application of the standards set forth above, the Court issues the following rulings:

### I.        Deposition Objections Pursuant to Rule 802

Interstate made wholesale objections to the designation of Mr. Conrad, Mr. Harmon, and Mr. Shiplet based on hearsay unless such witnesses were unavailable.  *See, e.g.*, [Doc. 133 at 4 n.2, 7 n.3, 14 n.4].

*Mr. Conrad.*   Although both Marriott International and Zurich American designated deposition excerpts from Mr. Conrad, whose deposition was taken in his individual capacity, no Party offered the deposition of Mr. Conrad, who appeared in person and provided live testimony. *See* [Doc. 124; Doc. 125; Doc. 126; Doc. 127].  Accordingly, this Court will not consider Mr. Conrad's deposition testimony—except in context of trial testimony when it was used for impeachment purposes—and this Court does not pass on the deposition designations or any associated objections.

*Mr. Harmon.*  Interstate objects to the designation of Mr. Harmon's deposition testimony by Zurich American under Rule 802 of the Federal Rules of Evidence.  [Doc. 133 at 7 n.3].  It is not entirely clear that Zurich American is still offering Mr. Harmon's deposition transcript excerpts as evidence, given Mr. Harmon's appearance at trial as Zurich American's corporate representative, and his testimony on August 30 and 31, 2023.  [Doc. 126; Doc. 127].  Nevertheless, out of an abundance of caution, this Court passes on Interstate's objection.  Although Rule 32(a)(3) permits "[a]n adverse party [to] use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)," Fed. R. Civ. P. 32(a)(3), it does not allow a party to use its own deposition for any

purpose.  Indeed, "it is clear that a party's own deposition is not admissible" as substantive evidence when the deponent has testified at trial.  *See Frito-Lay of P.R., Inc. v. Canas*, 92 F.R.D. 384, 391 (D.P.R. 1981); *see also United States ex rel. Poong Lim/Pert Joint Venture v. Dick Pac./Ghemm Joint Venture*, No. A03-290-CV(JWS), 2005 WL 3047864, at *1 (D. Alaska Nov. 10, 2005) ("In any federal trial court a party cannot offer its own witness' substantive testimony by deposition unless the witness is dead or otherwise unavailable within the meaning of Rule 32(a)([4]).").  Thus, this this Court will not consider designations by Zurich American of Mr. Harmon's deposition testimony and this Court does not pass on the deposition designations or any associated objections.

*Mr. Shiplet.*  Mr. Shiplet was not available at trial, and based on the Court's review of Mr. Shiplet's deposition transcript, Mr. Shiplet testified under oath that his home office is located outside of the 100-mile radius of the District of Colorado.  According to Rule 32(a)(4), a party may use for any purpose the deposition of a witness, whether or not a party, if the court finds that the witness is more than 100 miles from the place of hearing or trial, unless it appears that the witness's absence was procured by the party offering the deposition.  Fed. R. Civ. P. 32(a)(4)(B). There is no suggestion that Zurich American procured Mr. Shiplet's absence, and accordingly, this Court deems Interstate's objection as moot.

## II.    Specific Deposition Objections

| Deposition of David Buck – March 30, 2022 | | | |
|---|---|---|---|
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 122:6–123:5 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Sustained as to 122:16–20; 123:3–5; overruled as to the remainder |
| 138:24–140:18 | Interstate Restoration | Zurich American:  Fed. R. Evid. 701 | Sustained as to 139:9-18; overruled as to the remainder |

| Deposition of David Buck – May 10, 2022 | | | |
|---|---|---|---|
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 169:1–8 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Overruled |
| 169:13–18 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Overruled |
| 270:8–13 | Marriott International | Interstate Restoration:  Fed. R. Evid. 611(a) – calls for legal conclusion, vague and ambiguous | Overruled |
| 284:16–285:15 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 (as to 285:8–15) | Overruled |
| **Deposition of Zurich American (John Harmon – Rule 30(b)(6)) – January 27, 2022** | | | |
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 35:17–37:6 | Interstate Restoration | Zurich American:  (1) Fed. R. Evid. 611(a) – calls for a legal conclusion; (2) Fed. R. Evid. 602; (3) Fed. R. Evid. 802 | Overruled |
| 37:17–22 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Overruled |
| **Deposition of Marriott International (Hector Mastrapa – Rule 30(b)(6)) – February 3, 2022** | | | |
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 37:18–41:24 | Interstate Restoration | Marriott International:  (1) Fed. R. Evid. 611(a) (as to 39:19–23; 40:14–41:11; 41:22–24 – calls for a legal conclusion; (2) Fed. R. Evid. 106 – add 41:25–44:15 | Overruled |
| | | Zurich American:  Fed. R. Evid. 611(a) (as to 40:14–41:11) – calls for a legal conclusion | Overruled |
| 56:18–57:6 | Interstate Restoration and Zurich American | Marriott International:  Fed. R. Evid. 611(a) – calls for a legal conclusion | Overruled |
| 147:8–148:13 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Overruled |
| 156:12–157:10 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Sustained as to 156:12–21; overruled as to the remainder |

| Deposition of Ryan Porterfield – April 12, 2022 | | | |
|---|---|---|---|
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 53:25–54:17 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Sustained |
| 70:11–71:22 | Marriott International | Interstate Restoration:  (1) Fed. R. Evid. 402; (2) Fed. R. Evid. 403; (3) Fed. R. Evid. 602 | Overruled |
| 154:22–161:17 | Marriott International | Interstate Restoration:  (1) Fed. R. Evid. 402; (2) Fed. R. Evid. 403 | Overruled |
| 177:2–180:6 | Marriott International | Interstate Restoration:  (1) Fed. R. Evid. 402; (2) Fed. R. Evid. 403; (3) Fed. R. Evid. 602 | Sustained as to 177:16–21; 178:17–179:3; overruled as to the remainder |
| 182:5–184:1 | Zurich American and Marriott | Interstate Restoration:  Fed. R. Evid. 611(a) – vague as to "Marriott [International]," calls for a legal conclusion | Overruled |
| 195:13–199:13 | Marriott International | Interstate Restoration:  Fed. R. Evid. 602 (as to 195:13–198:19) | Overruled |
| 201:23–202:14 | Marriott International | Interstate Restoration:  Fed. R. Evid. 611(a) (as to 201:23–202:5) – calls for speculation and a legal conclusion | Sustained |
| 202:21–202:25 | Marriott International | Interstate Restoration:  Fed. R. Evid. 611(a) – vague and ambiguous, calls for a legal conclusion | Sustained |
| 220:24–222:12 | Zurich American | Interstate Restoration:  (1) Fed. R. Evid. 402; (2) Fed. R. Evid. 403 | Overruled |
| Deposition of Interstate Restoration (Matt Wenstrom) – March 24, 2022 | | | |
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 97:19–98:21 | Zurich American | Interstate Restoration:  Fed. R. Evid. 611(a) (as to 98:3–8) – assumes facts not in evidence and calls for a legal conclusion | Overruled |
| 345:7–346:23 | Marriott International | Interstate Restoration:  Fed. R. Evid. 611(a) – calls for legal conclusion | Sustained |
| Deposition of Interstate Restoration (Matt Wenstrom) – June 2, 2022 | | | |
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 379:18–382:3 | Zurich American | Interstate Restoration:  Fed. R. Evid. 611(a) (as to 380:13–382:3) – vague, ambiguous, calls for legal conclusion as to the meaning of "owner" | Sustained |

| Deposition of Cathie Winffel – February 10, 2022 | | | |
|---|---|---|---|
| **Page:Line** | **Designating Party** | **Objection** | **Ruling** |
| 36:15–39:24 | Interstate Restoration | Marriott International:  Fed. R. Evid. 611(a) – calls for a legal conclusion | Overruled |
| | | Zurich American:  Fed. R. Evid. 611(a) (as to 36:15–18) – calls for speculation | Overruled |
| 68:4–11 | Interstate Restoration | Zurich American:  Fed. R. Evid. 602 | Overruled |

### III.   Trial Exhibit 168

Finally, this Court turns to Plaintiff's request to admit Trial Exhibit 168 as a summary pursuant to Rule 1006 of the Federal Rules of Evidence.  *See* [Doc. 124 at 162:7–9].  Trial Exhibit 168 reflects the invoices issued by Interstate and the amounts paid with respect to those invoices, as well as a calculation of interest.  *See* [Tr. Ex. 168].

Rule 1006 permits the admission of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court" so long as the proponent makes the evidence upon which the summary is based available to the other party at a "reasonable time and place," Fed. R. Evid. 1006, and the summary is "accurate and nonprejudicial," *Daniel v. Ben E. Kieth Co.*, 97 F.3d 1329, 1335 (10th Cir. 1996).  Materials summarized pursuant to Rule 1006 evidence must themselves be admissible, and the proponent of such summary bears the burden of establishing its admissibility.  *See United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012).[6]

---

[6] Other Circuits have implemented a different test of admissibility pursuant to Rule 1006.  Such courts have held that to be admissible, an exhibit must summarize documents so voluminous that they "make comprehension difficult and inconvenient, although not necessarily literally impossible; the documents themselves must be admissible, although the offering party need not actually enter them; the party introducing the chart must make the underlying documents reasonably available for inspection and copying; and the chart must be accurate and

To the extent that Defendants object to the admission of Trial Exhibit 168 for the lack of foundation provided by Mr. Wenstrom, this Court respectfully disagrees.  Although Mr. Wenstrom did not create the exhibit, there is no strict requirement that the individual who created the exhibit be the one who lays a foundation for it so long as the individual testifying has personal knowledge. *See Warner Recs. Inc. v. Charter Commc'ns, Inc.*, No. 19-cv-00874-RBJ-MEH, 2022 WL 1500780, at *3 (D. Colo. May 12, 2022) (citing *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982)) (observing that "a proper foundation for a summary exhibit can be laid through the testimony of the witness who supervised preparation of the exhibit").  Mr. Wenstrom testified about his specific knowledge of the invoices sent by and payments made to Interstate and that he reviewed the chart, including the underlying formulas used for the calculations, and checked the underlying formula for accuracy.  [Doc. 124 at 245:5–246:9].  He further testified that 2% monthly interest applied to each of the unpaid or partially paid invoices in this case, based on his belief that the interest rate was tied to the AWO from ten days after the invoice date to the first day of trial. [*Id.* at 87:20–98:6, 141:12–16, 159:4–15].  Mr. Wenstrom also testified that Interstate received three payments,[7] and that those payments were assigned particular invoices based on the wiring

---

nonprejudicial." *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008) (cleaned up). While courts within the Tenth Circuit have applied similar standards, *see, e.g.*, *Griddine v. GP1 KS-SB, Inc*., No. 2:17-cv-02138-JAR, 2019 WL 1002049, at *8 n.75 (D. Kan. Feb. 28, 2019) ("Evidence under Rule 1006 must summarize underlying documents so voluminous that comprehension would be 'difficult' and 'inconvenient,' though not necessarily 'literally impossible.'") (quoting *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, 153 F. Supp. 3d 363, 374 (D.D.C. Jan. 28, 2016)), it does not appear that the Tenth Circuit has adopted this more robust standard.  In any case, Defendants' objections to the admission of Trial Exhibit 168 as substantive evidence based only on the second prong, specifically, the lack of foundation and hearsay as it relates to the calculations.  [Doc. 124 at 162:11-17]; *see also* [Doc. 96 at 30–31; Doc. 99 at 3].

[7] Mr. Wenstrom specifically testified as follows with respect to the invoices reflected in Trial Exhibit 168:  Invoice No. 52362, [Tr. Ex. 53], was paid in full, [Doc. 124 at 135:15–22,

instructions.  [*Id.* at 207:18–208:6].  While Mr. Wenstrom conceded that he did not do the math for every calculation, [*id.* at 245:15–246:6], even if Trial Exhibit 168 contains some error in calculation—an admission that Defendants did not elicit during their cross-examination of Mr. Wenstrom—such error would go to the weight, rather than the admissibility, of the exhibit, *see Iowa Pac. Holdings, LLC v. Nat'l R.R. Passenger Corp.*, 853 F. Supp. 2d 1094, 1102 (D. Colo. 2012).  But at no time during cross-examination did either Defendant demonstrate that the calculations reflected in Trial Exhibit 168 were incorrect despite an opportunity to do so.  *See F.D.I.C. v. Key Fin. Servs., Inc.*, No. Civ. A. 89-02366-DPW, 1999 WL 34866812, at *10 (D. Mass. Dec. 23, 1999), *aff'd sub nom. Resol. Tr. Corp. v. Key Fin. Servs., Inc.*, 280 F.3d 12 (1st Cir. 2002).

To the extent that Defendants object to the admission of Trial Exhibit 168 based on hearsay, this Court finds such objection unavailing.  Each of the invoices reflected in Trial Exhibit 168 has been admitted in evidence through Mr. Wenstrom's testimony, and Defendants have not objected to their admission.  *See* [Doc. 124 at 159:23–160:2, 135:16–140:25; Tr. Ex. 53 (Invoice No. 52362); Tr. Ex. 104 (Invoice No. 55180); Tr. Ex. 102 (Invoice No 55155); Tr. Ex. 115 (Invoice No. 57523); Tr. Ex. 103 (Invoice No. 55154); and Tr. Ex. 100 (Invoice No. 55134)].  While the bank wiring instructions do not seem to appear to be included in the trial exhibits, Mr. Wenstrom testified about his review of them and that he had copies of them.  [Doc. 124 at 207:14–208:6]; *see also see Irvin*, 682 F.3d at 1261 (documents upon which a summary is based need not be admitted but must be admissible).  There has also been no argument that such instructions (or any other underlying document) were not available to Defendants during discovery.

---

136:10–137:5]; Invoice No. 55134, [Tr. Ex. 100], was not paid, [Doc. 124 at 137:6–138:12]; and Invoice No. 55155, [Tr. Ex. 102], was paid in full, [Doc. 124 at 138:13–139:13].

Thus, the Court respectfully **OVERRULES** Defendants' objections based on lack of foundation and hearsay and **ADMITS** Trial Exhibit 168.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Zurich American Insurance Co.'s Objections and Responses to Deposition Designations [Doc. 95] are **OVERRULED in part and SUSTAINED in part**;

(2)     Defendant Marriott International, Inc.'s Objections to Deposition Designations [Doc. 98] are **OVERRULED in part and SUSTAINED in part**;

(3)     Plaintiff Interstate Restoration, LLC's Objections to Deposition Designations [Doc. 130] are **OVERRULED in part and SUSTAINED in part**;

(4)     Defendant Zurich American Insurance Co.'s Objections to and Responses to Exhibits [Doc. 96] are **OVERRULED as to Trial Exhibit 168**;

(5)     Defendant Marriott International Inc.'s Objections to Exhibits [Doc. 99] are **OVERRULED as to Trial Exhibit 168**;

(6)     Trial Exhibit 168 is **ADMITTED**; and

(7)     The Parties **SHALL FILE** their Supplemental Proposed Findings of Fact and Conclusions of Law on or before **December 15, 2023**.

DATED:  October 31, 2023                     BY THE COURT:

                                             Nina Y. Wang
                                             United States District Judge